D. Mackintosh & Sons Company, Plaintiff, *v.* Peter Spinell, Individually and Doing Business under the Name and Style of Ontario Thread Company, Defendant.

Supreme Court, New York County, May 21, 1925.

**Sales — action by seller to recover for breach of contract to manufacture and sell cotton yarn — part of yarn was delivered and paid for — manufacture was suspended at request of buyer and about one year later contract was repudiated by buyer — pleadings — complaint — allegation of offer to manufacture and deliver is sufficient allegation of readiness, willingness and ability to perform — measure of damages is to be determined as of time when contract should have been performed notwithstanding time of performance was extended.**

The complaint in an action to recover damages for breach of a contract to manufacture and sell cotton yarn contained a sufficient allegation of the readiness, willingness and ability of the plaintiff to perform by alleging that the plaintiff offered to manufacture and deliver the remaining installments of the yarn under the contract.

Although the manufacture of the yarn was suspended by the plaintiff at the request of the defendant who, about one year thereafter, repudiated the contract, the damages for the breach thereof are to be determined as of the date of the time when the contract should have been performed and not as of the date of the repudiation following the extension granted the defendant by the plaintiff at the defendant's request.

Action for breach of contract of sale involving refusal of buyer to accept further delivery of goods manufactured by plaintiff.

*Olin, Clark & Phelps* [*John C. Clark, William G. Murphy* and *T. Fergus Redmond* of counsel], for the plaintiff.

*Daniel Handler,* for the defendant.

Levy, J.:

This cause comes before me on an agreed statement of facts. It appears that on December 1, 1919, the plaintiff agreed with the defendant to manufacture and deliver to him 20,000 pounds of cotton yarn at the rate of ninety-three cents per pound. Of this order 8,042 pounds were delivered and paid for. On July 7, 1920, the plaintiff at the request of the defendant suspended manufacture and delivery of the remaining 11,958 pounds, and on August 6, 1921, it was advised by the latter that he would accept no further deliveries under the contract. The cost of manufacture to the plaintiff on December 1, 1919, was eighty-five and four-fifths cents per pound and this cost on August 6, 1921, was forty-one and one-half cents; and the profits to it if the contract had been fully performed as provided, would have been seven and one-fifth cents per pound, but if it had been permitted to resume manu-

facturing on August 6, 1921, at the time of the defendant's cancellation, the profit would have been fifty-one and one-half cents. The *stipulation* containing the *agreed facts treats with a preliminary* motion urged by the defendant for a dismissal of the complaint on the ground that it does not state facts sufficient to constitute a cause of action. This is predicated upon the contention that the plaintiff has failed to allege that it was ready, able and willing to perform its agreement at the time the defendant breached the same. As to this objection it suffices to say that plaintiff's allegation as to its offer to manufacture and deliver the remaining installments is a sufficient tender of performance to satisfy the requirements of the rules of pleading. The breach of contract by the defendant having been admitted, the sole and important question in the case is the one having to do with the measure of damages, or to be more exact — since this is admitted to be the loss of profits to the plaintiff — as of what date this loss is to be determined. It is conceded by the defendant that the contract was wholly executory as to the unfilled portion of the order. The measure of damages, therefore, following the rule in section 145, subdivision 4, of the Personal Property Law (as added by Laws of 1911, chap. 571) is the profit the plaintiff would have made had the contract been fully performed. (*Pierson & Co., Inc.* v. *Nederlandsch-Indische, etc.,* 203 App. Div. 365.) To arrive at this we must subtract from the contract price the cost of manufacture. The latter being a fluctuating factor, the important issue between the parties is this:

Shall the cost be computed as of the date of performance under the original contract or as of the date of the breach by the defendant, which occurred long after suspension, by mutual consent, of normal deliveries? If the latter period be taken, the computed cost will be much lower than in the former case and the damages to be awarded to the plaintiff consequently much greater. In view of the paucity of precedent on this point the question will have to be decided largely on principle, bearing in mind, however, the general rule that the aim of the law is to place the seller in the position he would have occupied had the buyer performed his contract. When the latter was entered into, the manufacturer had a fair estimate of the profit he would make. With modern methods of accounting the factors which enter into cost are capable of fairly definite approximation and even the fluctuation of the price of raw material can be guarded against by laying in a stock sufficient to fill the contract. The defendant having defaulted, the law allows the plaintiff as compensation the profit he would have made if the contract had been fully performed.

This is more than just in a case like the present, where the contract is entirely executory as to the unfilled balance of the order, so that the manufacturer will suffer no loss by reason of uncompleted work on hand. But the plaintiff urges that since the fulfillment of the contract was postponed at the request of the defendant for over a year and then repudiated by him, it is entitled to the loss of profit determined by the difference between the contract price and the lower cost of manufacturing at the date of the breach. In arguing thus the plaintiff is evidently using the analogy of sales contracts involving finished goods, the delivery of which is postponed at the request of the buyer beyond the contract date. In the event of the non-acceptance at the later date the defendant is entitled to the difference between the contract price and the market price at that time. This is the only fair rule to enable the seller to recoup his loss. To fix the period as of the date of original performance might subject the seller, who is not at fault, to loss by reason of a drop in the market between the earlier and the extended dates. This analogy, however, is misleading when applied here. When the time of performance was postponed the plaintiff had no unfinished stock on hand. He was not prejudiced by the delay, and he would not have been required to suffer the loss of his normal profit even if the cost of manufacture at the time of the breach had been much higher, instead of much lower as it was; for in that event the law would not have deprived him of the loss of such normal profit occasioned by no fault of his. To be sure the plaintiff contends that by postponing the time of performance at the request of the defendant, it took the risk of possible increased costs, and it should, therefore, have the benefit of any decrease in that respect. But this argument, it seems to me, is specious. The manufacturer's consent to a suspension of performance was voluntary, with an eye open to eventualities in the way of possible decreased profits if the defendant had carried out its contract to completion. When the latter refused to go on the plaintiff was restored to the position of the seller entitled to compensation based upon the normal outcome of the contract, the profit it would have received, if the contract had been carried out in the regular course. The contention of the defendant that the plaintiff's claim would have been limited to the lowest possible profit under the contract is unsound and based upon taking the following sentence in *Dryfoos* v. *Uhl* (69 App. Div. 118) out of its context: "No more damages could be recovered by the plaintiff than the lowest sum which the plaintiff would receive as profit if the contract had been fulfilled in any form which answered its terms."

What the case actually holds is that where a buyer had an option

to take a certain number of skirts or, in the alternative, a certain number of yards of black silk, no more damages could be recovered by the seller for breach of the contract before the goods were manufactured than the lowest sum which he would have received as profit if the contract had been fulfilled in any form which answered its terms. The reason for this is that the buyer had the option to demand the delivery of the order less profitable to the seller, and the latter's loss of profit must, therefore, be limited to the smaller sum. But the situation here is entirely different and the rule in that case does not serve in the instant situation, the decision in which rests not upon the ground that the loss of profit awarded is the " lowest sum," but by reason of the fact that it is the normal profit which the plaintiff would have made if the contract had been performed in regular course.

Following this reasoning, I direct that a verdict be entered in favor of the plaintiff against the defendant on the basis of a loss of seven and one-fifth cents per pound, aggregating the sum of $860.98, with costs, and that judgment be entered accordingly.